# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DIEGO SANTIAGO, M09479,

        Petitioner,

        v.

RANDY PFISTER, Warden,
Stateville Correctional Center,

        Respondent.

No. 15 C 5798

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Diego Santiago was convicted after a jury trial of first degree murder and unlawful discharge of a weapon. *See* R. 1 at 1. He is serving consecutive prison terms of 30 and 25 years at the Stateville Correctional Center in Illinois, where he is in the custody of Warden Randy Pfister.[1] *See id.* at 7. Santiago seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* R. 1. The Warden has answered the petition seeking its dismissal. R. 6. For the following reasons, Santiago's petition is dismissed and the Court declines to issue a certificate of appealability.

---

[1] Tarry Williams was the Warden of Stateville Correctional Center when Santiago filed his petition. *See* R. 1. Randy Pfister is now Stateville's Warden where Santiago still resides. *See* the Stateville webpage, https://www.illinois.gov/idoc/facilities/Pages/statevillecorrectionalcenter.aspx (last visited Jan. 27, 2017). Accordingly, Warden Pfister is substituted as the proper respondent. *See* Rule 2(a) of the Rules Governing Section 2254 Cases; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he proper respondent is the warden of the facility where the prisoner is being held."); *see also Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005).

## Background

### I.    Facts

Epifano Santos, a gang member, was murdered on December 28, 2006. Miguel Adorno and Martin Logan, members of a rival gang, were arrested shortly thereafter and each gave statements to the police, which were videotaped. Adorno told police that he and Santiago were in the same gang, and that Santiago had an ongoing feud with Santos. On December 28, Santiago's gang and Santos's gang had been fighting. Later that day, Santiago, Adorno, Logan, and other members of their gang met at Santiago's house. Santiago received a phone call from his girlfriend, Lisa, who is also the mother of Santos's child. Adorno overheard Santiago tell Lisa, "stop putting my name in shit, bitch, 'cuz you're going to see what's going to happen to him." Santiago got a gun and left with Adorno, Logan and the others to find members of Santos's gang to fight with. They found Santos and another member of his gang, Rene Otero, at the corner of Armitage and Tripp. Adorno and Logan struck Santos, knocking him to the ground. Santiago then shot Santos twice in the head. The details of Logan's statement were essentially the same as Adorno's.

Adorno and Logan both pled guilty to conspiracy to commit murder in connection with Santos's death. They both gave testimony at their plea hearings that was substantially similar to the statements they had previously given to police. At Santiago's trial, however, they testified that they could not remember their prior statements and testimony. Instead, they testified that Santiago was not present during Santos's murder and that another member of their gang named "Casper"

2

had killed Santos. Nevertheless, Adorno's and Logan's prior statements were admitted substantively at trial.

Another of Santiago's fellow gang members, Carlos Garcia, testified that he participated in the fight that resulted in Santos's murder. He testified that he saw Santiago during the fight in possession of a gun. He also saw Santiago walk toward Santos while Santos was on the ground. Garcia then heard gunshots but did not see the shots being fired.

Otero also testified that he saw Santiago armed with a gun. Like Garcia, he saw Santos on the ground, and heard, but did not see, the shooting.

## II.    Procedural History

Through counsel, Santiago made two claims on direct appeal: (1) "the State's introduction of two separate prior statements by both Miguel Adorno and Martin Logan was improper because it was cumulative and unduly bolstered their statements"; and (2) evidence that Adorno and Logan pled guilty "should have been excluded because it improperly suggested to the jury" that Santiago was also guilty. R. 7-3 at i-ii. Santiago conceded that he had not preserved these issues in the trial court. *Id.* at 33. But he argued that the appellate court should excuse his forfeiture of these issues under Illinois's plain error rule. The appellate court stated that "[p]lain error review is warranted when the evidence is closely balanced or the unpreserved errors deprived the defendant of fundamental fairness." *People v. Santiago*, 949 N.E.2d 290, 293 (Ill. App. Ct. 1st Dist. 2011) (citing *People v. Herron*, 830 N.E.2d 467 (Ill. 2005)). Applying that rule, the appellate court held that the

evidence presented at Santiago's trial was not closely balanced, and that Santiago had not identified any error at trial. *See Santiago*, 949 N.E.2d at 293. Thus, the appellate court held that Santiago's forfeiture of the issues he raised on appeal should not be excused. *Id.* The Illinois Supreme Court denied Santiago's petition for leave to appeal. *See* R. 7-7.

Santiago then filed a pro se postconviction petition in the circuit court raising multiple claims, only two of which he continued to raise in the appellate court. *See* R. 7-23 at 44-53. On an appeal made through counsel, Santiago's postconviction claims were reduced to the following: (1) "trial counsel was ineffective for failing to present Santiago's parents [as] alibi witnesses;" and (2) "trial counsel was ineffective for not calling witness Annette Vega[,] [who was present during the fight, and] who failed to identify Santiago in a police lineup," despite referring to her in his opening statement. *See* R. 7-8. The appellate court held that Santiago could not establish prejudice from trial counsel's failure to call his parents as witnesses because, in light of the statements or testimony from Adorno, Logan, Garcia, and Otero that Santiago was present during the fight, there was not a "reasonable probability" that the testimony of Santiago's parents that he was with them at the time of the fight would have "changed the outcome of the proceedings." *People v. Santiago*, 2014 WL 3002498, ¶ 22 (Ill. App. Ct. 1st Dist. June 30, 2014). The appellate court explained further that "there is no reasonable probability that a jury would have believed [Santiago's] assertion that he was not even at the crime

4

scene given the substantial evidence showing, to the contrary, that he was not only at the scene, but was guilty of shooting the victim in the head." *Id.*

The appellate court also rejected Santiago's claim regarding trial counsel's failure to call Vega because Santiago "failed to include a sworn affidavit by Vega showing her potential testimony, availability, and [Santiago] did not explain his failure to attach such an affidavit," as is required by 725 ILCS 5/122-2. The appellate court held further that the "police report stating that Vega viewed [a] line-up and was unable to make a positive identification of the shooter is not in and of itself enough to meet the requirements" of 725 ILCS 5/122-2. *Id.* ¶ 23.

Santiago's petition to this Court makes the following 18 claims:

> (1) "Due Process: trial court denied motion to determine reliability of witnesses[;] State obtained grand jury indictment through perjury/fabricated testimony[;] State, at trial, made improper arguments to jury. Court denied motion to determine reliability of witnesses and prior inconsistent statements were sole evidence of Defendant's guilt at trial";
>
> (2) trial counsel was ineffective for failing to call Santiago's parents;
>
> (3) trial counsel was ineffective for failing to call Vega;
>
> (4) trial counsel was ineffective for stipulating to the admissibility of excerpts of Adorno's and Logan's statements to the police;
>
> (5) trial counsel was ineffective for inadequately exploring the lack of video surveillance of the incident;
>
> (6) trial counsel was ineffective for failing to investigate evidence found at the crime scene;

(7) trial counsel was ineffective for failing to object to a map showing the short distance between Santiago's house and the crime scene;

(8) trial counsel was ineffective for failing to orally argue for a new trial;

(9) trial counsel was ineffective for giving a "scant closing argument";

(10) trial counsel was ineffective for failing to question the State's forensic witness;

(11) trial counsel was ineffective for not moving "to determine the credibility of the State witnesses" before they were permitted to testify;

(12) trial counsel was ineffective for "overall failing to investigate, prepare, and tender a proper defense";

(13) Santiago was denied due process because the state knowingly permitted Garcia to testify falsely;

(14) Santiago was denied due process because the state knowingly permitted Adorno to testify falsely;

(15) Santiago was denied due process because the state knowingly permitted Logan to testify falsely;

(16) trial counsel was ineffective for failing to call witnesses in support of his motion that Santiago was arrested without probable cause;

(17) Santiago was denied due process because of the admission of more than one prior inconsistent statement from Adorno and Logan;

(18) Santiago was denied due process because of the State's undue emphasis on the fact that Adorno and Logan pled guilty.

**Analysis**

## I. Procedural Default

### A. Fair Presentment: Claims 1 and 4 through 16

To properly raise any issue on habeas review, a petitioner must have "fairly presented" that issue through one complete round of state court review. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). Of the 18 claims Santiago makes in his petition in this Court, only claims 2, 3, 17, and 18 were presented through one complete round of state court review. Santiago raised claims 1 and 4 through 16 in his pro se postconviction petition. But after the circuit court denied that petition, he did not raise those claims with the appellate court. Therefore, they are procedurally defaulted and may not be addressed by this Court.

### B. Independent and Adequate State Law

In addition to the "fair presentment" requirement, a habeas claim "will be procedurally defaulted—and barred from federal review—if the last state court that rendered judgment 'clearly and expressly' states that its judgment rests on a state procedural bar." *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). "Accordingly, [courts do] not entertain questions of federal law in a habeas petition when the state procedural ground relied upon in the state court is independent of the federal question and adequate to support the judgment." *Lee*, 750 F.3d at 693 (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "An independent state ground will be found when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Lee*,

7

750 F.3d at 693. "A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.*

### 1.    Claims 17 and 18

"When a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules (i.e., because the petitioner failed to contemporaneously object), that decision rests on independent and adequate state procedural grounds." *Richardson v. Lemke*, 745 F.3d 258, 268-69 (7th Cir. 2014) (citing *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)). "Illinois law requires a convicted defendant to include any and all claims of error in a post-trial motion for a new trial," and "failure to comply with this requirement amounts to a waiver of the claim." *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005); *see also Mitchell v. Williams*, 2015 WL 5722447, at *6 (N.D. Ill. Sept. 29, 2015) (holding that under Illinois law "a party forfeits an argument on appeal by not presenting it at trial. Consequently, the Illinois appellate court's determination rested on an independent and adequate state ground.").

In claims 17 and 18 Santiago argues that the trial court erred in admitting too many prior inconsistent statements from Adorno and Logan (claim 17), and permitted unfair emphasis on Adorno's and Logan's guilty pleas (claim 18). Santiago raised these claims on direct appeal, but conceded that he had not preserved these claims in the trial court. On this basis, the appellate court held that Santiago forfeited these claims. Although the state appellate court went on to

8

discuss whether the trial court's rulings constituted plain error, this "alternative discussion of the claim on the merits does not ameliorate the procedural default." *Mitchell*, 2015 WL 5722447, at *6; *see also Brooks v. Walls*, 279 F.3d 518, 523 (7th Cir. 2002) ("A state court may say something like: 'this argument has been forfeited because not raised in the proper way (such as by an objection to the jury instructions); and the defendant has not established plain error because there was no error at all.' When it does this, it has not abandoned the procedural ground but has instead added a substantive failing to the procedural one."); *Willis v. Aiken*, 8 F.3d 556, 563 (7th Cir. 1993) (Consequently, we concluded that the state judgment rested on two adequate and independent grounds—the failure to make a contemporaneous objection and the lack of any error with respect to the instructions on the burden of proof."). Thus, claims 17 and 18 are not cognizable on habeas review because they were not properly preserved in the trial court.

### 2. Claim 2

The Seventh Circuit has also held that 725 ILCS 5/122-2 can serve as an independent and adequate state law ground barring habeas review. *See Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012). The appellate court expressly relied on 725 ILCS 5/122-2 in rejecting Santiago's claim that his trial counsel was ineffective for failing to call Vega, which is the claim he has labeled as claim 2 in his petition. Thus, claim 2 is not cognizable on habeas review. [2]

---

[2] Additionally, Santiago has not made any argument that would excuse his procedural defaults. He has not "demonstrate[d] both cause for and prejudice

## II.  Merits: Claim 3

Santiago argues that his trial counsel was ineffective for failing to call Santiago's parents as alibi witnesses. On habeas review, a petitioner claiming ineffective assistance of counsel must show that the state court unreasonably applied the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard asks (1) whether counsel provided representation that "fell below an objective standard of reasonableness," and (2) whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. Unlike a straightforward application of *Strickland*, on habeas review "the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The Supreme Court has described this standard for ineffective assistance of counsel claims on habeas review as being "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The appellate court held that Santiago could not establish prejudice from trial counsel's failure to call his parents as witnesses because, in light of the testimony or statements from Adorno, Logan, Garcia, and Otero that Santiago was present during the fight, there was not a "reasonable probability" that the testimony of Santiago's parents that he was with them at the time of the fight would have "changed the outcome of the proceedings." *Santiago*, 2014 WL 3002498,

stemming from [his] default," or "that denial of relief will result in a miscarriage of justice." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).

¶ 22. This is a reasonable analysis of potential prejudice, and thus is a reasonable application of the *Strickland* standard, such that claim 3 in Santiago's petition must be denied.

Moreover, even if there was a basis for the Court to disagree with the state court's analysis of potential prejudice under *Strickland* (which there is not), trial counsel's decision not to call Santiago's parents did not fall below *Strickland's* objective standard of reasonableness. The Seventh Circuit has held that, "[a]s a matter of trial strategy, counsel could well decide not to call family members as witnesses because family members can be easily impeached for bias." *Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995); *see also U.S. ex rel. Coleman v. Shaw*, 2009 WL 1904370, at *8 (N.D. Ill. July 1, 2009) ("Moreover, where one witness was Petitioner's uncle and the other was his girlfriend, the testimony the two provided would have been easily subject to impeachment given their close relationships with Petitioner. There is no reason to think that the testimony offered by these two interested witnesses would have altered the court's credibility determination, and the state appellate court's conclusion to that effect is consistent with federal law."); *Wiggins v. United States*, 2007 WL 4277442, at *4 (C.D. Ill. Dec. 3, 2007) ("This court further concludes that the Government is correct that Petitioner has not explained how testimony from family members would counter the eyewitness testimony from various witnesses who identified Petitioner as the robber, surveillance photographs of the robber from the credit union, and evidence that Petitioner was in possession of a large sum of money, including bait money

from the credit union robbery. This court must agree with the Government that Petitioner has utterly failed to show a reasonable probability that the outcome of his trial would have been different had his counsel called these alibi witnesses."). In light of the overwhelming evidence that Santiago was present at the scene of the crime, and his parents' implicit bias, it is likely that the jury would have inferred that Santiago's parents were lying. It was reasonable for trial counsel not to have called these witnesses.

## IV.    Certificate of Appealability

Lastly, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). Rule 11(a) of the Rules Governing § 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See Gonzalez v. Thaler*, 132 S.Ct. 641, 649 n.5 (2012). To obtain a certificate of appealability, a habeas petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This demonstration "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000); *see also Lavin v. Rednour,* 641 F.3d 830, 832 (7th Cir. 2011). Here, the Court's denial of Santiago's petition rests on application of well-settled precedent. Accordingly, certification of any of Santiago's claims for appellate review is denied.

12

## Conclusion

For the foregoing reasons, Santiago's petition, R. 1, is denied. The Court also declines to issue a certificate of appealability for any of the claims in the petition.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated:  January 27, 2017